Good morning, Your Honors. First, let me thank you for your time, and I would like to request three minutes' reservation for rebuttal. And please pay attention to the clock. Thank you. May it please the Court, Appellate Plaintiff James Farrens appeals the grant of summary judgment by the District Court of the Central District of California, based on the fact that there were clear facts in dispute, such that the motion for summary judgment should not have been granted. Appellant's lawsuit claimed that he was subject to discrimination based on his ancestry, by his supervisors, and that he was later subject to retaliation. What makes this case procedurally unusual is the fact that the District Court initially granted or initially denied Appellee's motion for summary judgment, and then directed the government to file a new motion for summary judgment close to three years later, during which time Appellant expended significant resources in terms of time and expense in preparation for trial. When the first motion for summary judgment was denied, the Court specifically stated, Hable, who was the supervisor, although that fact is also in dispute, made numerous disparaging remarks regarding Asians around the same time that she was removing Plaintiff Appellant from his job duties. Three years elapsed after the Court made that ruling, and the parties spent significant time and resources on discovery and trial preparation, until the Court, on its own initiative, directed the government to file a second summary judgment as to whether harassment and discrimination claims were time-barred, and whether there was sufficient evidence to prove the retaliation cause of action. Critically, for this panel, there are several points that are in dispute. First, as to the issue of whether Appellant's complaint was time-barred, the issue is both a factual and When did Mr. Ferencz, when did the Appellant first learn that he was removed from the Hawaii assignment? That fact is in dispute. Mr. Ferencz has stated, repeatedly, that he was told on January 31, 2011, by Webb, one of his other supervisors, at the direction of Hable, that the reason being explained by Webb that the decision was made. This was the Barking Sands inspection. Mr. Ferencz, Appellant, also submitted a memorandum on that issue. I would also invite the Court's attention to the record on appeal. At Volume 2, page 91, lines 7 to 8, or pardon me, Volume 5. Also, page 207, 1 to 23, 208, 12 to 14. Now, Appellant has claimed that the decision was made earlier and that Mr. Ferencz was also informed earlier. However, in addition to the question of whether or not, or pardon me, the time at which Appellant first learned of this decision, we have also raised the issue of waiver. This is a point that is in dispute. What has happened in this case was that Appellant raised the issue of his removal from the Barking Sands assignment as part of his administrative complaint. Further, after that, the agency accepted the complaint, conducted an investigation, and then issued a final agency decision on that matter. Counsel, doesn't the Boyd case squarely suggest that you don't have a waiver claim here? I would disagree, Your Honor, respectfully. With respect to the Boyd case, the circumstances are different in that, in this matter, the agency specifically released a final agency decision where the merits of the claim of discrimination were discussed and the timeliness of the administrative complaint had not been addressed. But did the merits were discussed, but did not result in a finding of discrimination? It did not result in a finding of discrimination. However, Your Honor, it did not address the issue of timeliness and the complaint was accepted. If we end up disagreeing with you on the statute of limitations issue, one of the points your opponent makes in the response is that the Hawaii reassignment wasn't enough adverse action by itself to trigger a disparate treatment claim. The district judge didn't make a finding on that, or at least didn't expressly make a finding on that. What do you have to say about that argument? Your Honor, we would argue that it was sufficient. Why? First of all, there was a specific financial loss to my client. This is the thing about the per diem? Yes, Your Honor. This was usually pocket per diems, though, do they? I mean, Your Honor, it did amount to over the course of time, that would have amount to several thousand dollars. Additionally, Your Honor, I figured what you'd say is that is that it's way, way better working in Hawaii than wherever he was working otherwise. Correct, Your Honor. We would also argue that the Hawaii assignment to like a plum assignment. Yes, Your Honor. There was a certain amount of taken away from you. There's a certain amount of procedure associated with this. Okay. Given the fact that this was the culmination of other assignments and other actions that had been systematically stripped of Mr. Farrans, this ultimately led him to, at that point, resign. And we would argue that it was further, although the court did not address this, this was the culminating event that led to his constructive termination that led him to believe that he had no other option but to resign. So you're at three minutes. Do you want to reserve your time? Yes, Your Honor. I would reserve three minutes for rebuttal. All right. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Assistant United States Attorney Jessica Che on behalf of the Secretary of Defense. The grant and summary judgment in this case should be affirmed for three primary reasons. First, the vast majority of Mr. Farrans' disparate treatment claims are, in fact, time barred. There was one claim to address the arguments made by counsel that the district court deemed timely, and that being the reassignment of the two Hawaiian inspections. But even assuming the existence of a prima facie case as to that claim, Mr. Farrans failed to offer specific and substantial evidence that the agency's stated reasons for making those reassignment decisions was pretext. Second, the district court correctly concluded that Mr. Farrans' hostile work environment claim was time barred. Can I? No, go ahead. That's fine. I'm happy to answer any questions. No, I'm jumping ahead to the hostile work environment. I want you to be able to say what you're going to say on this, on the statute of limitations thing. Even, well, I was actually shifting to the hostile work environment. Okay, so I have a question about that. Is it the law that the adverse conduct has to be racially, or I guess in this case, ethnically tinged itself to give rise to a claim? That's my reading of it, Your Honor. And the case that I was... So if you had a case, for example... I mean, the pattern instructions, and I know those don't have the force of law, the Ninth Circuit pattern instructions don't say that. It just says for racial or ethnic or gender reasons. So if you had a case, for example, like a supervisor puts the guy's desk in the hallway, doesn't let him talk at staff meetings, has somebody follow him around, writes him up for everything, none of which would by itself give rise to a disparate treatment claim. And this judge just comes out and says, I'm doing this to you because I hate Asian Americans. That wouldn't be enough. Well, we do take the position that this court, at least, has held that the conduct must be racially disparaging in nature or whatever protected class is at issue. So the only racially... And the case that I would refer the court to is the Minat case. Here, all of the racially directed comments allegedly made by Ms. Cable were in 2010. Even if we assume that the harassment extends to the one claim that the court deemed to be timely, that being the reassignment in Hawaii, the conduct, the racially charged conduct was not sufficiently severe or pervasive to give rise to an abusive working environment to Mr. Ferentz, who admits that he was neither the subject of those comments nor even present when those comments were made. Moreover, there's no tether to the... There's no connection between the racially disparaging comments and the actual action to the extent that those comments were made six to eight months prior to the reassignment being made. The district court characterized these as stray remarks, but are they really stray remarks? These weren't an off-color joke that could have been misconstrued. I mean, one of the things that Mr. Ferentz submitted in his summary judgment was a declaration from a co-employee saying that Ms. Cable said, quote, you can't trust Martha Trevino because she's Chinese. It seems beyond your typical stray remark that's potentially ambiguous or maybe said in jest. We are not taking the position that those comments would be acceptable, appropriate, or at minimum, they're tactless and offensive. However, the question is whether or not they are sufficiently severe and were made in a frequency that would be sufficiently pervasive to give rise to an abusive working environment for Mr. Ferentz. Set the hostile work environment to the side for the disparate treatment claim. Isn't that enough, that type of statement? I don't think so, Your Honor. The one claim that the district court deemed timely was the Hawaii reassignment. And that decision was made, A, by Mr. Webb. I think that's in dispute. That's a question of fact. Agreed, Your Honor. Probably to be resolved by the jury. Even assuming, as Mr. Ferentz contends, that Ms. Cable was the one who made that decision. Her comments were made six to eight months before that decision was made. So I would take the position that, at most, it is weak circumstantial evidence of discriminatory animus. That's not what this court requires. Just a straight relevance issue? I'm sorry? I mean, people use these for terms like straight remarks. Isn't it just a plain old relevance issue? I agree that it could be. And so if somebody says something a year earlier or two years earlier that indicates that they're basically bigoted against somebody in the person's class, is the assumption that that goes away a year later? I mean, why wouldn't that be relevant? I don't think, well, if it's relevant, that's one thing. But I don't think that we can presume that every employment action that is taken subsequent to those comments, no matter how remote in time, are because of discriminatory animus, as opposed to the legitimate. There were other things that were happening. Even if he can't state a claim based on these other things, like all of a sudden his work being checked by somebody who was not of Asian descent and being, you know, other instances that were going on, that even though they might be time-barred as the basis for a claim, there's still evidence. I tend to agree with Judge Cannelli that even though he can't state a claim based on those things, there are evidence of the animosity that a decision-maker had against Mr. Ferencz. Well, my response to that is, even if relevant, the question is whether that circumstantial evidence is sufficiently specific and substantial to constitute a claim. Is that the question on summary judgment, though? I mean, this whole thing seems a little it's whether or not there's a genuine issue of disputed fact. Well, under the burden-shifting analysis, Your Honor, once the agency has proffered a stated legitimate business reason for taking the actions at issue, the burden then shifts back to the plaintiff to provide specific and substantial evidence that the agency's reasons for taking the actions at issue. That's a question of ultimate proof. But if they come up with disputed questions of fact that need to be resolved by a jury, the jury decides whether that was substantial evidence of legitimate employment decision-making. Well, I would respectfully disagree, Your Honor, because I believe that the question of whether or not particular circumstantial evidence that is offered by the plaintiff is specific and substantial is a question of law for the court. And I would point the court to the Villarimo case for that. Just in terms of, since Your Honor brought up the rechecking of the assignments, one point of clarification I would like to make for that is, although Mr. Farron's on appeal and in his district court papers characterizes it as rechecking, his EEO complaint suggests otherwise. Specifically, at least with respect to one of the inspections, in his complaint he indicates that he was not able to complete a check of two of the systems, which was why Mr. Hutton was ultimately brought in, not to check his work, but to complete the inspections that he was unable to do. Similarly, with respect to, I believe it was the Boeing facility, which is the second facility at issue with regard to those claims, Mr. Hutton, I believe, was brought in to check decertified systems that Mr. Farron's was unable to see. So I think it's a little bit confusing to refer to them as rechecking when, at least in Mr. Farron's EEO complaint, he initially described them as Mr. Hutton being brought in to finish work that he was unable to complete due to time constraints. And the last point I would just make is with respect to Mr. Farron's retaliation claim, which we obviously believe is foreclosed as a matter of law for the simple fact that Ms. Webb and Mr. Weaver all submitted testimony that they had no knowledge of his prior EEO activity until they were later contacted by a counselor with regard to his complaint. And at that time, Mr. Farron's had already left the agency. So because this court has held that an acting official's knowledge of the protected activity is crucial to a finding of retaliation, that claim fails as a matter of law. And unless the court has any further questions for me, we would submit that the grant of summary judgment should be affirmed. All right. Thank you, counsel. May it please the court. We have some brief matters to discuss in terms of our rebuttal. First of all, we'd like to point that counsel for the government has referred to Mr. Farron's raising circumstantial evidence. This is one of the rare cases in this subject matter where we have direct evidence of discrimination. We have Habel specifically stating numerous times, as the lower court stated as part of its ruling on the first MSJ, that Habel made numerous disparaging remarks against Asians around the same time. This rises to the level of direct evidence. While we do not have a direct statement from Habel saying, I don't like Asians and therefore I am making these decisions, to hold that as a requirement for something to be considered direct evidence raises an almost insurmountable barrier. Simply put, there is sufficient evidence before the court that the motion for summary judgment should not have been granted. Furthermore, there are substantial factual issues in dispute. We have the issue of whether the stated reasons were pretextual or not. With respect to that, that fact is also critically in dispute. There have been shifting reasons that were set forth by the government in response to Mr. Farron's complaint as to the basis for it. As to one of the critical justifications set forth was that there was a rotational policy. However, this fact is in dispute. No written policy was put forth by the government as evidence. Furthermore, Mr. Farron specifically testified that he was not aware of any rotational policy that was in place while he was at the office in Los Angeles, nor was he ever trained during any of the trainings that he attended as part of his position on the existence of a rotational policy. Under these circumstances, given these shifting reasons, there is further sufficient factual dispute such that this matter should have proceeded to the jury. Furthermore, as to the issue of the animus, again, while there are matters that were time-barred, the Court should have also considered the prior statements and prior actions as evidence of animus in this case. That concludes my time, subject to questions by the Court.
judges: Wardlaw, Kennelly, Lee